**UNITED STATES of America, Appellant,**

v.

**Kelvin DOCKERY.**

**No. 90–3093.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 9, 1991.

Decided June 9, 1992.

Stevan E. Bunnell, Asst. U.S. Atty., with whom, Jay B. Stephens, U.S. Atty., John R. Fisher, and Ray W. McLeese, III, U.S. Attys., Washington, D.C., were on the brief, for appellant.

Robert A. Carolina, Student Counsel,* with whom, Steven H. Goldblatt and Beth E. Cook, Washington, D.C., were on the brief, for appellee.

Before RUTH BADER GINSBURG, THOMAS,** and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case presents due process and Speedy Trial Act questions controlled by the panel and *en banc* decisions in *United States v. Mills*, 925 F.2d 455 (D.C.Cir.1991),

---

* Entered an appearance as Student Counsel pursuant to Rule 19 of the General Rules of this Court.

** Former Circuit Judge Thomas, now an Associate Justice of the Supreme Court of the United States, was a member of the panel when the case was argued but did not participate in this opinion.

*reheard en banc,* 964 F.2d 1186 (D.C.Cir. 1992).[1] The *Mills* panel and *en banc* decisions held that the U.S. Attorney for the District of Columbia did not violate the federal Speedy Trial Act or the Due Process Clause of the Fifth Amendment when he terminated prosecutions in the D.C. Superior Court and reinstituted them in the U.S. District Court a block away[2] to take advantage of the sterner penalties set by the federal sentencing law and sentencing guidelines.[3]

The case now before us, like those considered in *Mills,* started with a D.C. Superior Court prosecution which the U.S. Attorney eventually dropped in favor of a new indictment instituting a federal prosecution. The appeal, taken by the government, concerns the sentence. Pronouncing sentence prior to our panel and *en banc* decisions in *Mills,* the district judge departed downward from both the federal statutory minimum sentence and the federal sentencing guidelines to impose a term of imprisonment corresponding to the one that the defendant would have received had he been convicted in Superior Court. Because the departure rests on an incorrect projection of circuit law, we vacate the sentence and remand the case to the District Court for resentencing consistent with the panel and *en banc* decisions in *Mills,* and with this opinion.

## I.

On January 24, 1989, Kelvin Dockery was indicted in Superior Court under D.C.Code § 33–541(a)(1) for possession with intent to distribute cocaine, possession with intent to distribute marijuana, and possession with intent to distribute hashish. The day before trial was to begin in Superior Court, on June 6, 1989, a federal grand jury indicted Dockery for the very same conduct charged four and a half

months earlier in the D.C. indictment. The following day, on the U.S. Attorney's motion, the Superior Court dismissed the local prosecution. On August 17, 1989, Dockery pled guilty in federal court to one count of possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(iii). As part of the federal plea agreement, the prosecutor dropped the marijuana and hashish counts.

The presentence report showed that under the federal sentencing guidelines, the applicable sentencing range was 121 to 151 months. The report also noted that the federal statute defining the crime to which Dockery had pled guilty mandated a term of imprisonment of not less than ten years (120 months). In arresting contrast, the sentence Dockery would have received had he been convicted in Superior Court ranged from 20 months to five years. *See* D.C.Code § 33–541(a)(2)(B), (c)(1)(B).

On October 31, 1989, the U.S. District Court continued the sentencing hearing and allowed Dockery to file a Motion to Sentence Outside the Sentencing Guidelines based on the government's transfer of the case from Superior Court to District Court. The government opposed the motion. On November 21, 1989, the district judge again continued the sentencing hearing. This time, the judge ordered the pause to permit consideration of an intervening decision, one in which a judge of the same court had dismissed cases transferred from Superior Court to District Court; the transfers, that district judge held, denied defendants due process and violated the Speedy Trial Act. *United States v. Holland,* 729 F.Supp. 125 (D.D.C.1990), *rev'd sub nom. United States v. Mills,* 964 F.2d 1186 (D.C.Cir.1992) (*en banc*).

---

1. On its own motion, on May 29, 1991, the court ordered the appeal in this case held in abeyance pending rehearing *en banc* in *Mills.*

2. The U.S. Attorney for the District of Columbia serves as the prosecution authority for both federal and local courts in the District.

3. The "transfers" of prosecutions from local to federal court were prompted by the Bush Administration's initiation of a strong policy to combat drug-related crime in the District of Columbia. *See Mills,* 964 F.2d at 1188 (*en banc* decision); *id.,* 925 F.2d at 457 (panel opinion).

Over the course of three subsequent hearings, the district judge in Dockery's case continued to question the propriety of transfers from local court to federal court. The judge indicated particular concern over the Assistant U.S. Attorney's alleged refusal to keep open a plea offer extended to Dockery during the pendency of his case in Superior Court.[4] Ultimately, on April 2, 1990, the district judge sentenced Dockery to 20 months to five years imprisonment, the sentence to which he would have been subject had he been convicted in Superior Court. The government appeals, maintaining that Dockery's sentence impermissibly falls below the federal statutory minimum of ten years (120 months) and the federal guidelines minimum of 121 months.

## II.

■ Guided by the *en banc* and panel decisions in *Mills*, we hold that the circumstances thus far shown in this case do not justify a sentence below the minimums imposed by federal statute and sentencing guidelines.[5] We therefore vacate the sentence and remand for resentencing.

### A. *The Propriety of the Transfer in Light of* Mills

As in this case, the appellees in *Mills* were first charged in D.C. Superior Court, but those charges were later dismissed in favor of subsequent prosecutions in federal court for exactly the same criminal conduct. The District Court in the *Mills* litigation dismissed the indictments, concluding that they violated both the Speedy Trial

Act and the Due Process Clause of the Fifth Amendment. *United States v. Holland*, 729 F.Supp. 125 (D.D.C.1990). We reversed. *United States v. Mills*, 964 F.2d 1186 (D.C.Cir.1992) (*en banc*); *see id.*, 925 F.2d 455 (D.C.Cir.1991) (panel decision). Our *en banc* judgment in *Mills* adheres to, although it modifies the statutory analysis of, *United States v. Robertson*, 810 F.2d 254 (D.C.Cir.1987). *Robertson* held that a District of Columbia arrest on D.C.Code charges is not assimilable to an arrest "in connection with" federal charges within the meaning of the Speedy Trial Act. *Mills* also confirms that the government's desire to secure "stiffer sentences" supplies no cause for avoidance of the Speedy Trial Act construction this court stated in *Robertson*, and restated in *Mills*. *See Mills*, 964 F.2d at 1188 (*en banc* decision) (referring to Bush Administration policy "to take advantage of the tougher federal sentences"); *id.*, 925 F.2d at 461 (panel opinion).

On the due process issue raised in *Mills*, the three-judge panel noted that the U.S. Attorney, who serves as both federal and local D.C. prosecutor, unquestionably may elect to prosecute a criminal defendant on federal rather than District charges. The U.S. Attorney, the *Mills* panel recognized, is free to choose the federal track precisely because it carries the more severe sentences. *See Mills*, 925 F.2d at 461. The *Mills* panel concluded that the legislature's enlargement of the prosecutor's role in sentencing decisions, and the corresponding reduction in judicial discretion, do not so

---

**4.** At some point after Dockery's indictment in Superior Court, but before his indictment in federal court, Dockery changed counsel. When the new counsel spoke to the Assistant U.S. Attorney in charge of the case about a possible plea, he was allegedly told "that the plea offer extended to [his] predecessor had expired, and that [the prosecutor] was 'tired of defense counsel requesting plea offers and then not taking them.'" Brief for Appellee at 2–3 (quoting Motion to Sentence Outside the Sentencing Guidelines at 2).

**5.** When a sentencing judge departs from the sentencing range set forth in the guidelines, the judge must state in open court "the specific reason for the imposition of a sentence different

from that described" in the guidelines. *See* 18 U.S.C. § 3553(c); *see also U.S. v. Ogbeide*, 911 F.2d 793, 795 (D.C.Cir.1990) (remanding for specific statement of grounds for departure). Although the district judge in this case made it clear that he was troubled by the U.S. Attorney's practice of transferring cases, the judge did not specify whether the downward departure rested on a perceived due process violation, speedy trial concerns, the prosecutor's refusal to renew the D.C. Superior Court plea offer, or a pervasive dissatisfaction with the aggressiveness of the prosecution. *Mills* indicates, however, that none of the listed reasons would warrant a departure on the facts currently in the record.

warp the criminal justice system as to render the Sentencing Reform Act offensive to due process. *See id.* at 462–63. The panel also ruled that the local to federal court transfers in *Mills* did not indicate "prosecutorial vindictiveness" of the kind that might constitute a due process violation. *See id.* at 463–64. On *en banc* review in *Mills,* the full court left undisturbed the panel's rejection of the defendants' due process arguments. *See Mills,* 964 F.2d at 1188 n. 3.[6]

■ Turning to the "transfer" case before us, we agree with the government that the Assistant U.S. Attorney's alleged refusal to re-extend the D.C. Superior Court plea offer to Dockery's successor counsel is not enough to distinguish this case from *Mills.* The decision whether to offer a plea bargain is largely a matter of prosecutorial discretion. *See, e.g., Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977); *United States v. Moody,* 778 F.2d 1380 (9th Cir.1985); *cf. United States v. Bell,* 506 F.2d 207, 222 (D.C.Cir. 1974) (prosecutorial discretion in offering plea bargains, though "exceedingly broad," may not rest on "an unjustifiable standard such as race, religion, or other arbitrary classification"). The prosecutor generally is free to refuse to plea bargain or, having made a plea offer, to withdraw it at any time. *See, e.g., Mabry v. Johnson,* 467 U.S. 504, 506–08, 104 S.Ct. 2543, 2545–46, 81 L.Ed.2d 437 (1984); *Stokes v. Armontrout,* 851 F.2d 1085, 1089–91 (8th Cir. 1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 823, 102 L.Ed.2d 812 (1989); *see also United States v. Pleasant,* 730 F.2d 657, 663–65 (11th Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984) ("Like any offeror, [the prosecutor] can withdraw his offer at any time, unless, perhaps, the ap-

pellee has relied on the offer and the prosecutor should be estopped from withdrawing it."). The decision not to re-extend the D.C. Superior Court plea offer, case law bears out, fits within the legitimate range of prosecutorial discretion. We are therefore left without any dispositive distinction between the transfer of Dockery's case to the District Court and the transfers upheld in *Mills.*

**B. The Departure from the 10–Year Statutory Minimum**

The statute defining the crime to which Dockery pled guilty mandates a ten-year minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A). The only statutory exception to this mandatory minimum is provided by 18 U.S.C. § 3553(e), which gives a court, upon motion of the government, "authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Dockery does not contend that he qualified for the "substantial assistance" exception.

■ Dockery does contend, however, that the District Court appropriately departed from the statutory minimum in order to remedy the prosecution's "misuse" of authority. We reserve the question whether prosecutorial misconduct of constitutional dimension might warrant court departure from a congressional direction for a minimum sentence.[7] "Misuse" of a lesser order, we are persuaded, would not justify a court's disregard of Congress' sentencing instruction. *Cf. United States v. Payner,* 447 U.S. 727, 733–37, 100 S.Ct. 2439, 2445–47, 65 L.Ed.2d 468 (1980). As we have just recounted, the transfer practice

---

**6.** Also left undisturbed by the court *en banc* was the *Mills* panel's remand for consideration whether the transfers there at issue violated the defendants' Sixth Amendment speedy trial rights. *Id.; see* 925 F.2d at 465 (*Mills* panel noted that the issue "called for a highly fact-specific analysis"). No Sixth Amendment right to a speedy trial question was raised before the District Court in this case; accordingly, appellee has not urged such an issue in this court.

**7.** For a case in point, *see United States v. Redondo-Lemos,* 754 F.Supp. 1401 (D.Ariz.1990) (disparity in charges brought against defendants guilty of similar misconduct, and consistent pattern of more favorable treatment of female defendants, were constitutional violations warranting sentence below mandatory minimum).

at issue was upheld against a due process challenge in *Mills*, and the Sixth Amendment speedy trial question left open in *Mills* was not raised in Dockery's case. *See supra* note 6. We therefore reject Dockery's "prosecutorial abuse" argument as cause for sentencing below the mandatory minimum.

In the alternative, Dockery argues that the government did not explicitly refer to the statutory minimum in the District Court, and thereby waived that provision. We hold that no waiver occurred. At the initial plea hearing, the court asked Dockery if he knew what sentence he would receive; Dockery responded, "I understand that [it] is 10 years mandatory." Transcript of August 17, 1989, at 16. The presentence report stated that there was a ten-year mandatory minimum. Just before sentencing Dockery, the district judge remarked to counsel, "Under this mandatory, he gets 10 years, [right]?" Transcript of April 2, 1990, at 11. Although the government never expressly informed the court that a ten-year statutory minimum applied, the prosecution strenuously objected to a downward departure from the slightly longer guidelines minimum. The government's continuous protest against any downward departure, together with the District Court's recognition of, and explicit reference to, the ten-year mandatory minimum, adequately preserved the matter for consideration on appeal. *Cf. United States v. Ragan*, 952 F.2d 1049 (8th Cir.1992) (upholding downward departure from guideline range where government wholly failed to object to departure at sentencing).

### C. *The Departure from the 121–Month Guidelines Minimum*

 The minimum sentence dictated by the sentencing guidelines is longer, albeit only by one month, than the mandatory minimum imposed by statute. The question remains, therefore, whether the District Court, on remand, can depart from the 121–month guideline minimum and sentence Dockery to the ten-year (120–month) statutory minimum. A sentencing court must impose a sentence within the guidelines "unless the court finds that there

exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The district judge, thus far, has not identified a qualifying mitigating circumstance.

Dockery argues for displacement of the federal guidelines on the ground that the Sentencing Commission did not "contemplate the prosecutor's arbitrary use of its discretion to extend plea offers and to select the forum in which a defendant will be indicted." Brief for Appellee at 10–11. Although the sentencing guidelines do not address forum choice and plea offers, this is presumably because the Commission recognized both decisions as within the province of prosecutors. The Commission wrote guidelines for an existing system of criminal procedure; it almost certainly did not intend that decisions traditionally within the prosecutor's ken, and within constitutional bounds, be counterbalanced by a sentencing court.

Dockery further argues that the Commission intended a court to " 'control any inappropriate manipulation of the indictment [by the prosecutor] through use of its power to depart from the specific guidelines sentence.' " *Id.* at 12 (quoting Sentencing Guidelines Ch. 1, Pt. A 4(a), at 1.6 (Nov. 1989)). The Commission's concern, however, related to a prosecutor's manipulation of counts within an indictment. In the Commission's words:

> The Commission ... recognizes that a charge offense system has drawbacks of its own. One of the most important is its potential to turn over to the prosecutor the power to determine the sentence by increasing or decreasing the number (or content) of the counts in an indictment. Of course, the defendant's actual conduct (that which the prosecutor can prove in court) imposes a natural limit upon the prosecutor's ability to increase a defendant's sentence. Moreover, the Commission has written its rules for the treatment of multicount convictions with an

eye toward eliminating unfair treatment that might flow from count manipulation.... Further, a sentencing court may control any inappropriate manipulation of the indictment through use of its power to depart from the specific guidelines sentence.

Sentencing Guidelines Ch. 1, Pt. A 4(a), at 1.6 (Nov. 1989).[8] The transfer of cases from Superior Court to District Court, it thus appears, is not the kind of "inappropriate manipulation" the Commission sought to check.

Dockery concedes that departures from the guidelines are appropriate only in "atypical" or "unusual" situations, *see* Sentencing Guidelines Ch. 1, Pt. A 4(b), at 1.6–1.7 (Nov.1989), but argues that his is just such a case. Atypicality, although a necessary condition for a guidelines departure, is not, in itself, sufficient to justify such action. We further note that if Dockery's situation appears atypical outside the District of Columbia, it is not altogether extraordinary inside the District, as the *Mills* case shows. If Dockery merits a less severe sentence, then all other defendants similarly situated do as well, or else the standardization purpose of the federal guidelines will be defeated. To allow this whole class of "transferred" defendants to receive reduced sentences, however, would conflict irreconcilably with the prosecutor's discretion, which we upheld as lawful in *Mills*, to go for the sterner federal sentences.

### Conclusion

Dockery's sentence is vacated and the case is remanded for resentencing in light of this opinion and the panel and *en banc* decisions in *Mills*.

*It is so ordered.*

---

**8.** In November 1990, while this appeal was pending, the Commission made minor, non-material revisions to this section of the guidelines.

*See* Sentencing Guidelines, Ch. 1, Pt. A 4(b) at 1.5 (Nov. 1990).